**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LATOYA CRAMSEY | : | |
| 20 North 2nd Street, 2nd Flr. | : | |
| Coplay, PA 18073 | : | |
| | : | JURY DEMANDED |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. |
| FRAGRANCE MANUFACTURING, INC. | : | |
| 100 Cascade Drive | : | |
| Allentown, PA 18109 | : | |
| | : | |
| Defendant | : | |

CIVIL ACTION COMPLAINT

And now Plaintiff, LATOYA CRAMSEY, by and through her undersigned counsel, files this Complaint alleging that her rights, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, et seq. ("Title VII");  the Americans with Disabilities Act and its 2008 amendments ("ADA"), 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 et seq.;  and the Pennsylvania Human Relations Act ("PHRA"), have been violated and avers as follows:

PARTIES

A. The Plaintiff

1.     Plaintiff, LATOYA CRAMSEY ("Cramsey") is an adult individual residing in Lehigh County at 20 North 75th Street, 2nd Floor, Coplay PA 18073.

B. <u>The Defendant</u>

2.      Defendant, Fragrance Manufacturing Inc., ("FMI") is a Pennsylvania corporation with a headquarters in Lehigh County located at 100 Cascade Drive, Allentown, PA 18109.

3.      FMI was Cramsey's employer from August 27, 2018 until her unlawful termination on or about March 15, 2020.

4.      At all times, FMI met the definition of "employer" under Title VII, the ADA, the FMLA, and the PHRA.

JURISDICTION AND VENUE

5.      This Complaint alleges retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, *et seq*. ("Title VII"); discrimination on the basis of Cramsey's disability status, and retaliation, in violation of the Americans with Disability Act, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"); interference and retaliation with Cramsey's rights in violation of the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("FMLA"); and pendent state law claims arising under the provisions of the laws of the Commonwealth of Pennsylvania, to wit, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq*. ("PHRA").

6.      Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      This Honorable Court has jurisdiction of this matter, case and controversy pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 2000e-5(f).

8.      Additionally, pursuant to 28 U.S.C. §1367, this Court has Supplemental jurisdiction to hear all of Cramsey's claims arising under the Pennsylvania Human Rights Act ("PHRA").

9. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District.

ADMINISTRATIVE PROCEEDINGS

10. On June 17, 2020, Cramsey filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2020-04418, alleging discrimination, retaliation and wrongful discharge from her employment due to the actions of Defendant, and dual filed with the Pennsylvania Human Relations Commission ("PHRC").

11. Cramsey has been advised of her individual right to bring a civil action by receiving a Notice of Rights from the EEOC, dated July 24, 2020 (attached as "Exhibit A").

12. Cramsey has exhausted the administrative remedies available to her, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

OPERATIVE FACTS

13. FMI hired Cramsey as a front desk administrative assistant on August 27, 2018.

14. In late 2019 Cramsey began experiencing debilitating pain in her back and right leg due to a slipped disk. Cramsey began seeking medical treatment for these conditions. FMI permitted Cramsey to rearrange her schedule so that she could attend doctor visits and receive physical therapy. At this point, FMI moved Cramsey from the position of front desk administrative assistant to being an administrative assistant in their Materials Management Support department.

15.     On February 10, 2020 Cramsey noticed that her coworker appeared upset. When Cramsey asked this coworker why he was upset, he explained that another coworker had sexually harassed him and had assaulted him by slapping his buttocks so far that it left a mark.

16.     Cramsey told this coworker that he should report this incident to FMI's Human Resources department. The coworker responded that he did not want to make a report to the Human Resources department for fear of retaliation. In response, Cramsey told the coworker that she would take his statement and personally deliver it to FMI's Chief Executive Officer Kevin Rhodes. The coworker agreed.

17.     Cramsey brought the coworker to her office. With Cramsey's assistance, he prepared a written statement about how he was the target of sexual harassment and sexual assault. When he finished with his statement, Cramsey delivered a copy of the statement to Mr. Rhodes.

18.     On February 11, 2020 Cramsey received an email from Human Resources Manager Wendy Wittenau and another email from Logistics Manager Michele Egry. Both emails asked Cramsey to meet with them regarding the coworker's complaint.

19.     As directed, Cramsey met with Ms. Wittenau that morning. When Cramsey arrived at Ms. Wittenau's office, Cramsey saw Ms. Wittenau along with Warehouse Manager John (last name unknown) and Training Coordinator Angel (last name unknown).

20.     Ms. Wittenau began to aggressively interrogate Cramsey about her involvement with her coworker's complaint. Ms. Wittenau repeatedly asked Cramsey to describe her coworker's state-of-mind, and to explain who drafted the statement. Ms. Wittenau told Cramsey that she was not qualified to assist the coworker in the preparation or delivery of his complaint of harassment. John and Angel remained silent during this meeting.

4

21.     Afterwards, Cramsey met with Ms. Egry. Ms. Egry also asked Cramsey if she wrote the coworker's complaint. When Cramsey used the word "harassment" in reference to her coworker's allegations, Ms. Egry admonished Cramsey for using the word "harassment" which she referred to as the "h-word." Ms. Egry told Cramsey "you don't ever want to deal with people who use that word because they can turn things around on you and sue you."

22.     Over the following days Ms. Egry and Ms. Wittenau refused to speak with Cramsey.

23.     During this time, Cramsey's back and leg pain became progressively more severe. Cramsey's medical providers recommended that she take a medical leave of absence so that she could obtain surgical treatment.

24.     On or about February 25, 2020 Cramsey spoke with Ms. Wittenau about taking continuous leave pursuant to the Family and Medical Leave Act ("FMLA") so that she could treat her condition. While Ms. Wittenau provided Cramsey with FMLA paperwork, she told Cramsey that she would not be eligible to take FMLA leave until she missed fifteen days of work.

25.     Cramsey began her medical leave on or about February 26, 2020.

26.     On March 3, 2020 Cramsey's Primary Care Provider sent Ms. Wittenau a medical certification regarding Cramsey's request for FMLA leave. This form requested that Cramsey receive four weeks of continuous leave so that she could receive medical treatment for her back and leg.

27.     Several days later, Ms. Wittenau called Cramsey and told her that her request for FMLA leave had been approved.

28.     However, on March 9 2020 Ms. Wittenau left Cramsey a voicemail saying that FMI required more information regarding her FMLA leave request. Cramsey left Ms. Wittenau

voicemails about the request later that day, and again on March 10, 2020. Ms. Wittenau never returned Cramsey's voicemails.

29.     Several days later Ms. Wittenau notified Cramsey that FMI terminated her employment. Ms. Wittenau explained to Cramsey that while she had been approved for intermittent medical leave, she had not been approved for continuous medical leave.

30.     As a direct and proximate result of FMI's conduct in terminating Cramsey, Cramsey sustained great economic loss, future lost earning capacity, lost opportunity, lost wages and benefits, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### RETALIATION

31.     Cramsey incorporates the preceding paragraphs as if set forth more fully at length herein.

32.     At set forth above, Cramsey made complaints about sexual discrimination and harassing conduct in workplace and as such, Cramsey was engaged in protected activity under Title VII of the Civil Rights Act.

33.     FMI took adverse action against Cramsey by terminating her employment.

34.     As set forth above, Cramsey's participation in protected activity was a motivating factor in FMI's decision to terminate her employment.

35.     As such, FMI's decision to terminate Cramsey's employment is a retaliatory action prohibited by the Civil Rights Act of 1964, §704(a).

36.     As a proximate result of FMI conduct, Cramsey sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Cramsey has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

37.     As a result of FMI's conduct, Cramsey hereby demands punitive damages.

38.     Pursuant to the Civil Rights Act of 1964, §704(a), 42 U.S.C. §2000e-3(a), *et seq.*, Cramsey demands attorneys' fees and court costs.

## COUNT II
## AMERICANS WITH DISABILITIES ACT

39.     Cramsey incorporates all the preceding paragraphs as if they were set forth at length herein.

40.     Based on the foregoing, Cramsey alleges that FMI violated the ADA by subjecting her to discrimination on the basis of her actual and/or perceived disabilities and/or records of impairment.

41.     Cramsey has multiple disabilities which substantially interfere with one or more of her daily life activities – including walking, bending, lifting, concentrating, and working.

42.     Despite being disabled, Cramsey was capable of performing the essential duties of her position.

43.     Cramsey further alleges that FMI violated the ADA by failing to engage her in the interactive process and provide her with reasonable accommodations for her disabilities

44.     FMI's conduct caused Cramsey to sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Cramsey has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

45.     Cramsey prays that FMI be required to provide all appropriate remedies available under the ADA.

COUNT III
VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
INTERFERENCE

46.     Cramsey incorporates the preceding paragraphs as if set forth more fully at length herein.

47.     The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

48.     At all times material, FMI knew, or should have known, of Cramsey's need for FMLA Leave due to her serious medical condition.

49.     FMI approved Cramsey's request for leave under the FMLA.

50.     FMI terminated Cramsey who was using approved FMLA leave.

51.     FMI acted in bad faith by interfering with Cramsey's approved FMLA leave.

52.     FMI knowingly, intentionally, willfully and/or recklessly acted in disregard of their duty to grant Plaintiff's FMLA-related request for leave.

53.     FMI's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1)

54.     As a direct and proximate result of FMI's unlawful interference with Cramsey's rights under the FMLA, Cramsey has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

55.     Cramsey demands judgment in her favor against FMI for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

56.     Cramsey further demands judgment in her favor against FMI for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against FMI and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

COUNT IV
VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
RETALIATION

57.     Cramsey incorporates all the preceding paragraphs as if they were set forth at length herein.

58.     Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C) Cramsey was eligible for Family and Medical Leave Act Leave.

59.     At all times material, FMI knew, or should have known, of Cramsey's need for FMLA leave medical leave due to her serious medical condition.

60.     Cramsey gave FMI sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

61.     FMI approved Cramsey for leave under the FMLA.

62.     Nonetheless, FMI terminated Cramsey while she was on FMLA leave.

63.     FMI's motivation for terminating Cramsey was connected causally to Cramsey's assertion of FMLA leave.

64.     FMI acted in bad faith by retaliating against Cramsey in violation of the FMLA.

65.      As a direct and proximate result of FMI's discharge of Cramsey, Cramsey is and was deprived economic and non-economic benefits resulting from FMI's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Cramsey's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

66.     Cramsey demands judgment against FMI for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Cramsey was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

67.     Cramey further demands favorable judgment against FMI for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums,

10

as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against FMI and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

## COUNT V
## VIOLATION of the PENNSYLVANIA HUMAN RELATIONS ACT

68.     Cramsey incorporates all the preceding paragraphs as if they were set forth at length herein.

69.     Based on the foregoing, Cramsey alleges that FMI violated the Pennsylvania Human Relations Act ("PHRA") by subjecting her to discrimination on the basis of her actual and/or perceived disabilities, and/or records of impairment.  Cramsey further alleges that FMI violated the PHRA by failing to engage her in the interactive process and provide her with reasonable accommodations for her disabilities.

70.     Cramsey further alleges that FMI violated the PHRA by retaliating against her for her making complaints of sexual harassment and discrimination and for retaliating against her for requesting reasonable accommodations.

71.     FMI's conduct caused Cramsey to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, loss of tips as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Cramsey has also sustained work loss, loss of opportunity, and a permanent diminution of her earning power and capacity and a claim is made therefore.

72.     As a result of the conduct of FMI, Cramsey hereby demands punitive damages.

73.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*
Cramsey demands attorneys' fees and court costs.

WHEREFORE, Plaintiff Latoya Cramsey demands judgment in her favor and against
FMI in an amount in excess of $150,000.00 together with:

A.  Reinstatement of position with a comparable salary and benefits including, medical,
    vacation and sick time, in addition to any other associated employee benefits to which
    she may be entitled.

B.   Compensatory damages, including but not limited to: back pay, front pay, past lost
    wages, future lost wages, lost pay increases, lost pay incentives, lost opportunity, lost
    benefits, lost future earning capacity, injury to reputation, mental and emotional
    distress, pain and suffering;

C.  Punitive damages;

D.  Attorneys fees and costs of suit;

E.  Interest, delay damages; and,

F.  Any other further relief this Court deems just proper and equitable.

LAW OFFICES OF ERIC A. SHORE, P.C.

BY:        /s/ Brian M. Doyle (PA Id. 319475)
           BRIAN M. DOYLE, ESQ.
           Two Penn Center
           1500 JFK Boulevard, Suite 1240
           Philadelphia, PA 19102
           *Attorney for Plaintiff*

Date: July 28, 2020

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S § 4904, relating to unsworn falsification to authorities.


Jul 28, 2020

La'Toya R. Cramsey (Jul 28, 2020 11:58 PDT)
_____
Date                                                    LaToya Cramsey

13